# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

```
* * * * * * * * * * * * * * * * * * * * * * * *
AUTUMN ORM,                          *
                                     *        No. 14-257V
                    Petitioner,      *        Special Master Christian J. Moran
                                     *
v.                                   *        Issued: May 21, 2019
                                     *
SECRETARY OF HEALTH                  *        Attorneys' fees and costs;
AND HUMAN SERVICES,                  *        interim award.
                                     *
                    Respondent.      *
* * * * * * * * * * * * * * * * * * * * * * * *
```

### DECISION DENYING ATTORNEYS' FEES AND COSTS ON AN INTERIM BASIS[1]

On January 25, 2018, Ms. Orm filed a renewed motion for an award of interim attorneys' fees and costs. The Secretary filed a response in which the Secretary did not interpose any specific objection to Ms. Orm's request. In the months since January 2018, the parties have been ordered to file additional briefs on the question of whether Ms. Orm's petition possesses reasonable basis and the reasonableness of the requested amount. Because the undersigned finds that a finding on reasonable basis is not appropriate at this time, the undersigned declines to award Ms. Orm interim fees and costs under the authority granted by the Vaccine Act.

\*        \*        \*

The procedural history of this case is lengthy. The petition was filed in 2014 and the critical events began in 2011.[2] The petition alleged that on August 30, 2011, Ms. Orm received the first dose of the human papillomavirus (HPV) vaccine. In September, Ms. Orm experienced

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

[2] Originally, the petitioners were Theodore Orm and Jodi Orm, the parents of Autumn Orm, who were acting on her behalf. When Autumn attained the age of majority, she became the petitioner. Because the identity of the petitioner(s) does not affect the outcome of the pending motion for an award of attorneys' fees and costs, this decision treats Autumn Orm as the petitioner.

shortness of breath and weakness in her legs, especially when she ran for her school's cross-country team.  The petition further alleged that Ms. Orm received a second dose of the HPV vaccine on November 22, 2011.  In January 2012, Ms. Orm was hospitalized for abdominal pain and other problems.  The petition also alleges that Ms. Orm continued to suffer from weakness and, by October 2013, a doctor was considering the possibility that she suffered from myasthenia gravis.  The petition concludes that the August 30, 2011 and November 22, 2011 vaccinations caused Ms. Orm to develop myasthenia gravis.

After Ms. Orm filed medical records, the Secretary reviewed the information.  The Secretary maintained that Ms. Orm had not established that she was entitled to compensation primarily because Ms. Orm had not demonstrated that she suffered from myasthenia gravis.  Resp't's Rep., filed pursuant to Vaccine Rule 4, on August 7, 2014.  The Secretary's report also linked Ms. Orm's hospitalization in January 2012 to celiac disease.  Id.

In the ensuing status conference, Ms. Orm stated she intended to investigate whether she could prosecute her claim based upon a theory that she suffered from myasthenia gravis.  Order, issued Aug. 27, 2014.  Ms. Orm also stated that she would explore obtaining additional support from percipient witnesses, such as coaches, about her function in fall 2011.  Id.

Ms. Orm filed affidavits from her coaches.  Exhibits 16-19.  She also stated that the vaccines caused her to suffer celiac disease.  Pet'r's Status Rep., filed Sept. 9, 2014.  About one month later, Ms. Orm indicated that additional testing showed that she suffers from postural tachycardia syndrome (POTS).  Pet'r's Status Rep., filed Oct. 22, 2014.

The case advanced to the stage of obtaining reports from expert witnesses.  Ms. Orm filed the first of many reports on February 26, 2015.  Initially, Ms. Orm was relying upon an opinion from Dr. Svetlana Blishteyn.  Exhibit 28.  Dr. Blishteyn took on the question of diagnosis.  Dr. Blishteyn stated that Ms. Orm probably did not suffer from myasthenia gravis.  Consistent with the Secretary's report, Dr. Blishteyn recognized that during the January 2012 hospitalization, doctors diagnosed Ms. Orm as suffering from celiac disease.  Dr. Blishteyn proposed that Ms. Orm's leg weakness and shortness of breath, which were manifest during Ms. Orm's participation in athletic events in fall 2011, could be due to a complication of the undiagnosed celiac disease.  However, Dr. Blishteyn found this explanation inadequate because, in Dr. Blishteyn's view, after the diagnosis of celiac disease, Ms. Orm continued to have problems.  Therefore, Dr. Blishteyn concluded that Ms. Orm must be suffering from another disease and Dr. Blishteyn identified this other disease as POTS.

Having set forth a diagnosis, Dr. Blishteyn then explained how the HPV vaccinations could have caused POTS.  In short, Dr. Blishteyn presented the theory of molecular mimicry.  With respect to celiac disease, Dr. Blishteyn stated: "It is also possible that vaccination, with its potent stimulation of the immune system, may have been the triggering factor for the autoimmune disease process of Celiac disease."  Exhibit 28 at 7.

The Secretary responded with a report from Dr. Eric Lancaster.  Exhibit A, filed May 26, 2015.  Dr. Lancaster challenged Dr. Blishteyn's diagnosis of POTS.  He also contended that the timing of events did not fit together.  In Dr. Lancaster's opinion, the shortness of breath and

leg weakness in fall 2011 were simply and exclusively manifestations of celiac disease. The symptoms that arguably could be related to POTS did not occur until more than a year after the vaccinations. This latency was too long to assign causation to the vaccinations. Apart from this chronology, Dr. Lancaster also challenged molecular mimicry as a way to explain how the HPV vaccination could have caused POTS.

In response, Ms. Orm filed three items from Dr. Blishteyn. Exhibit 32 is a report she made after having a 60-minute telephone call with Ms. Orm and her mother. Exhibit 33 is a response to Dr. Lancaster's report and exhibit 34 is a response to questions the undersigned posed. Dr. Lancaster addressed all of these in another report. Exhibit B, filed October 15, 2015.

At this point, the parties paused the further development of expert reports. They attempted to resolve the case informally but once settlement efforts failed, they wanted to proceed to a hearing. The case was scheduled for a hearing on October 6, 2016, during which the experts would testify. Order, issued March 24, 2016. In the months prior to the hearing, Ms. Orm filed a flurry of material, including more affidavits, medical records, and medical articles. The parties eventually determined that Ms. Autumn Orm and her mother (Ms. Jodi Orm) should testify in advance of the expert testimony and they did testify in a hearing conducted by videoconferencing on September 16, 2016.

Between the date of the fact hearing (September 16, 2016) and the anticipated date of the expert hearing (October 6, 2016), Ms. Orm requested a status conference. In that status conference, Ms. Orm's counsel of record, Mark Krueger, stated that within the last week he had learned of a medical article that suggested that celiac disease could cause POTS.[3] In light of this information, Dr. Blishteyn could not proceed on a theory that the vaccinations caused POTS. See Pet'r's Status Rep., filed Nov. 3, 2016 (memorializing many representations during the Sep. 26, 2016 status conference). Mr. Krueger suggested that he might turn to another doctor, Yehuda Shoenfeld, who is well-known in the Vaccine Program. Without a supporting opinion from Dr. Blishteyn, the Secretary questioned the reasonable basis to continue the litigation. Because the case appeared to be shifting away from a claim based upon POTS to a claim based upon celiac disease, the expert hearing was cancelled. See order, issued Sep. 30, 2015.

In multiple status conferences, the parties discussed when Ms. Orm started to suffer symptoms of celiac disease. While it is clear that she was diagnosed with celiac disease in January 2012, she started displaying at least some symptoms months earlier.

The parties then pivoted to obtaining reports from people knowledgeable about celiac disease. Ms. Orm submitted a report from Aaron Lerner, a pediatric gastroenterologist from Germany. Exhibit 88, filed January 26, 2017. The Secretary responded with a report from Chris Liacouras, a gastroenterologist from Philadelphia. Exhibit T, filed April 10, 2017. Ms. Orm obtained a rebuttal from Dr. Lerner. Exhibit 150, filed July 27, 2017.

_____

[3] Sadly, Mr. Mark Krueger passed away during this litigation. His son, Andrew Krueger, succeeded him as counsel of record for Ms. Orm for a time. Ms. Orm's current counsel of record is Mark Sadaka.

On June 1, 2017, Ms. Orm filed a motion for an award of attorneys' fees and costs, seeking $370,887.55. The largest item, by far, was Dr. Lerner's invoice for $207,000. Upon an initial review, the undersigned issued an order, scheduling a status conference to discuss, among other points, whether a lack of objection from the Secretary constitutes a waiver of any objections to the amount requested in fees. Order, issued June 9, 2017.

After this status conference, the Secretary filed two responses, the first on August 17, 2017, and the other on August 25, 2017. In the August 17, 2017 response, the Secretary argued that Ms. Orm's case lost a reasonable basis on September 14, 2016. Therefore, the Secretary objected to any fees and costs incurred after that date. Ms. Orm maintained that reasonable basis continues to support her claim. Pet'r's Reply, filed Sept. 7, 2017.

In the Secretary's second response, the Secretary maintained that "his role in the resolution of attorneys' fees and costs is narrow in comparison to his role in addressing the merits of the petition." Resp't's Resp., filed Aug. 25, 2017, at 6. The Secretary argued that special masters are obligated to review requests for attorneys' fees and costs even when the Secretary does not interpose any specific objection.

In recognition of the dispute over reasonable basis, the undersigned ordered Ms. Orm to file a renewed motion for attorneys' fees and costs, which did not include any attorneys' fees and costs incurred after September 14, 2016. The Secretary was offered an opportunity to respond to this new motion. Order, issued Dec. 13, 2017, citing Vaccine Rule 20(b).

Ms. Orm filed her amended motion on January 25, 2018. Consistent with the December 13, 2017 order, Ms. Orm did not request any attorneys' fees or costs for work performed after September 14, 2016. This restriction reduced the amount sought to $105,580.29. (Because Ms. Orm retained Dr. Lerner after September 14, 2016, none of his work is included.)

The Secretary responded on February 9, 2018. His position was consistent with his submissions from August 2017. The Secretary stated that reasonable basis supported the petition through September 14, 2016. Resp't's Br., filed Feb 9., 2018, at 2. The Secretary otherwise did not comment on any of the items requested. Instead, the Secretary requested that the special master exercise discretion.

On July 5, 2018, the undersigned requested additional information from both petitioner and respondent regarding petitioner's renewed fees motion. The additional information concerned both the question of reasonable basis as well as the reasonableness of the requested amount. Petitioner filed her response on August 1, 2018, the Secretary filed his on August 15, 2018, and petitioner filed a reply on August 22, 2018. In his August 15, 2018 response, the Secretary changed positions regarding reasonable basis. As noted earlier, the Secretary had previously accepted that reasonable basis supported the petition through September 14, 2016. See Resp't's Br., filed Feb. 9, 2018, at 2; Resp't's Br., filed Aug. 17, 2017, at 1. However, in his most recent brief, the Secretary asserted that Ms. Orm's case did not have reasonable basis at any time. See Resp't's Br., filed Aug. 10, 2018, at 10. After the submission of petitioner's reply, the motion became ripe for adjudication.

4

In the months since, Mr. Mark Sadaka has replaced Mr. Kreuger as Ms. Orm's counsel. The first status conference with Mr. Sadaka as counsel was held on December 18, 2018.  During the status conference, petitioner requested time to determine how she would like to proceed on her petition.  Order, issued Dec. 20, 2018.  Since the course of Ms. Orm's petition was not clear, the undersigned delayed an adjudication of Ms. Orm's request for interim fees during this time.  After being provided several months to consider her next steps, petitioner reported during a status conference on May 8, 2019 that she would like to proceed on a claim that the vaccine caused her to develop celiac disease and that other conditions she suffers from are sequella to celiac.  Order, issued May 9, 2019, at 1.  The parties agreed that the evidentiary record is most likely complete and anticipated proceeding with briefs on entitlement in the upcoming months. Id.

*     *     *

Interim fee awards are available in Vaccine Act cases.  Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008).  However, petitioners are not entitled to fee awards as a matter of right; an award of interim fees is within the discretion of the special master.  See Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl. 86, 92 (2016) (even after good faith and reasonable basis have been established, the special master must determine "whether to exercise his or her discretion to award attorneys' fees and costs"); cf. Avera, 515 F.3d at 1352 (holding that even though permitted under the Vaccine Act, an interim award was not appropriate in that case).

As a matter of discretion, the undersigned finds that an award of interim fees is not appropriate at this time.  There remains a vigorous debate between the parties regarding the continued reasonable basis for this petition.  Indeed, the Secretary argues that petitioner should not be awarded any fees or costs because her petition is not supported by reasonable basis.  Resp't's Br., filed Aug. 15, 2018, at 10-11.  On the other hand, petitioner has just recently reaffirmed her desire to proceed on her petition and has stated an honest belief that she believes her evidence preponderates.  See order, issued May 9, 2019.

Under these circumstances, the undersigned does not find this juncture to be an appropriate time to weigh in on the feasibility of petitioner's case.  Based on the representations by the parties in the May 8, 2019 status conference, the parties anticipate submitting briefs on entitlement in the upcoming months.  These briefs will provide the correct avenue for the undersigned's assessment of the objective evidence that supports Ms. Orm's petition.  This is especially true since Ms. Orm has stated that she intends to modify the theory of her case.

The undersigned is also concerned about the possibility that a ruling on reasonable basis may result in unintended consequences.  A finding that reasonable basis exists at this time may falsely lead petitioner to continue to spend considerable resources on a case that, once the underlying facts and arguments become more apparent through the upcoming briefing, is not supported by a reasonable basis.  Amplifying this concern is the undersigned's observation that petitioners, with increasing frequency, are citing interim fees decisions finding reasonable basis to support reasonable basis analyses in subsequent motions for fees.  In other words, petitioners are relying on interim fees decisions finding reasonable basis as guidance for the reasonable

basis for the petition going forward.  This expressed reliance, misplaced or not, militates for a delay on the adjudication of the reasonable basis question until the underlying arguments are clarified in the upcoming briefing.

Just as concerning, the undersigned does not want to find that Ms. Orm's petition is not supported by reasonable basis at a time when she is still formulating her theory of the case.  A denial of fees because the undersigned does not believe that objective evidence supports the petition may needlessly chill what is, ultimately, a feasible, if underdeveloped petition.

Accordingly, without making a determination on Ms. Orm's statutory eligibility for an award of fees and costs, as a matter of discretion the undersigned declines to award Ms. Orm interim fees at this time.  Petitioner's motion is thus DENIED.  Ms. Orm may renew her request for attorneys' fees and costs at a later time.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master