# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
Filed: April 2, 2024

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| AUTUMN ORM, | * | UNPUBLISHED |
| | * | |
| Petitioner, | * | No. 14-257V |
| | * | |
| v. | * | Special Master Nora Beth Dorsey |
| | * | |
| SECRETARY OF HEALTH | * | Attorneys' Fees and Costs. |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| | * | |
| * * * * * * * * * * * * * * | | |

<u>Mark Theodore Sadaka</u>, Law Offices of Sadaka Associates, LLC, Englewood, NJ, for Petitioner.
<u>Debra A. Filteau Begley</u>, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION ON ATTORNEYS' FEES AND COSTS**[1]

On April 2, 2014, Autumn Orm ("Petitioner")[2] filed a petition under the National Vaccine Injury Compensation Program ("Vaccine Act" or "the Program"), 42 U.S.C. § 300aa-10 et seq. (2012)[3] alleging that as a result of human papillomavirus ("HPV") vaccines (Gardasil)

---

[1] Because this Decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc in accordance with the E-Government Act of 2002.  44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services).  **This means the Decision will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

[2] The petition was originally filed by Theodore and Jodi Orm, as parents of Autumn Orm.  Petition (ECF No. 1).  On November 9, 2015, the case caption was amended to Autumn Orm because she reached the age of majority.  Order dated Nov. 9, 2015 (ECF No. 60).

[3] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to -34 (2018).  All citations in this Decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

1

she received on August 30, 2011 and November 22, 2011, she suffers from celiac disease.[4] Amended ("Am.") Petition at Preamble (ECF No. 172); Joint Submission, filed May 23, 2022, at 1 (ECF No. 296). On March 24, 2023, the undersigned issued a decision dismissing the petition. Decision dated Mar. 24, 2023 (ECF No. 310).

On July 28, 2023, Petitioner filed a motion for attorneys' fees and costs. Petitioner's Motion for Attorney Fees and Costs ("Pet. Mot."), filed July 28, 2023 (ECF No. 314). Petitioner requests compensation in the amount of $381,977.41, representing $70,285.15 in attorneys' fees ($70,109.97) and costs ($175.18) from her current counsel, Mark Sadaka, and $311,692.26 in attorneys' fees ($68,613.10) and costs ($243,079.16) from her former counsel, Krueger & Hernandez SC. Id. at 4. Petitioner warrants that she has already been reimbursed for personal costs incurred in pursuit of her claim for compensation. Id. at 5; see Decision Awarding Interim Attorneys' Fees and Costs ("Interim Decision") dated Mar. 29, 2022, at 2, 15 (ECF No. 291).

Respondent filed his response on August 25, 2023, stating he "defers to the Special Master as to whether the statutory requirements for an award of attorneys' fees and costs are met in this case." Respondent's Response to Pet. Mot. ("Resp. Response"), filed Aug. 25, 2023, at 2 (ECF No. 315). Respondent noted however that a "vast majority" of the amount sought by Petitioner's former counsel relates to expert services rendered by one expert who asserted he spent 740 hours writing two expert reports for a total cost of $214,000.00. Id. at 1. Petitioner filed a reply on August 25, 2023, relying on the information provided in her original motion and requesting the Court grant $381,977.41 in attorneys' fees and costs. Pet. Reply to Resp. Response ("Pet. Reply"), filed Aug. 25, 2023 (ECF No. 316). The matter is now ripe for disposition.

For the reasons discussed below, the undersigned **GRANTS IN PART** Petitioner's motion and awards a total of $266,766.56.

## I. DISCUSSION

Under the Vaccine Act, the special master shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. § 15(e)(1). When compensation is not awarded, the special master "may" award reasonable attorneys' fees and costs "if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim for which the petition was brought." Id. In this case, although the petition was eventually dismissed, the undersigned is satisfied that the case possessed both good faith and reasonable basis throughout its pendency. Respondent also has not advanced any

---

[4] Petitioner initially alleged that she suffered from bilateral leg weakness and myasthenia gravis, and subsequently asserted that she suffered from celiac disease, Postural Orthostatic Tachycardia Syndrome ("POTS"), Chronic Fatigue Syndrome ("CFS"), Small Fiber Neuropathy, and other autoimmune diseases. Petition at Preamble (ECF No. 1); Amended ("Am.") Petition at Preamble (ECF No. 172). In her joint submission, however, Petitioner narrowed the issues and confirmed celiac disease as her alleged vaccine-related illness. Joint Submission, filed May 23, 2022, at 1 (ECF No. 296).

argument that the claim lacked good faith or reasonable basis. Accordingly, Petitioner is entitled to a final award of reasonable attorneys' fees and costs.

### A.     Reasonable Attorneys' Fees

The Federal Circuit has approved use of the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. Avera v. Sec'y of Health & Hum. Servs., 515 F.3d 1343, 1349 (Fed. Cir. 2008). Using the lodestar approach, a court first determines "an initial estimate of a reasonable attorney's fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-58 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Then, the court may make an upward or downward departure from the initial calculation of the fee award based on other specific findings. Id. at 1348.

Counsel must submit fee requests that include contemporaneous and specific billing records indicating the service performed, the number of hours expended on the service, and the name of the person performing the service. See Savin v. Sec'y of Health & Hum. Servs., 85 Fed. Cl. 313, 316-18 (2008). Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of Health & Hum. Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. at 1522. Furthermore, the special master may reduce a fee request sua sponte, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. See Sabella v. Sec'y of Health & Hum. Servs., 86 Fed. Cl. 201, 209 (2009).

A special master need not engage in a line-by-line analysis of a petitioner's fee application when reducing fees. Broekelschen v. Sec'y of Health & Hum. Servs., 102 Fed. Cl. 719, 729 (2011). Special masters may rely on their experience with the Vaccine Program and its attorneys to determine the reasonable number of hours expended. Wasson v. Sec'y of Health & Hum. Servs., 24 Cl. Ct. 482, 484 (Fed. Cl. Nov. 19, 1991), rev'd on other grounds & aff'd in relevant part, 988 F.2d 131 (Fed. Cir. 1993). Just as "[t]rial courts routinely use their prior experience to reduce hourly rates and the number of hours claimed in attorney fee requests . . . [v]accine program special masters are also entitled to use their prior experience in reviewing fee applications." Saxton, 3 F.3d at 1521.

#### i.     Reasonable Hourly Rates

Petitioner requests the following hourly rates for the work of her current counsel: for Mr. Mark Sadaka, $396.00 per hour for work performed in 2018, $405.00 per hour for work performed in 2019, $422.00 per hour for work performed in 2020, $444.00 per hour for work performed in 2021, $458.00 per hour for work performed in 2022, and $482.00 per hour for work performed in 2023. Petitioner also requests rates between $150.00 and $186.00 per hour for work of her counsel's paralegal, Michelle Curry, from 2018 to 2023.

3

Petitioner requests the following hourly rates for work of her former counsel: for Mr. Mark L. Krueger, $363.00 per hour for work performed in 2016 and $376.00 per hour for work performed in 2017; for Mr. Andrew M. Krueger, $200.00 per hour for work performed in 2016 and 2017; and for Ms. Stephanie A. Thompson, $200.00 per hour for work performed in 2017 and 2018. Petitioner also requests the rate of $140.00 per hour for work of her counsel's paralegal, Renee Nehring, from 2016 to 2018.

The undersigned finds that the requested rates are reasonable and in accordance with what these attorneys and paralegals have previously been awarded for their Vaccine Program work. See, e.g., Humphreys ex rel. E.H. v. Sec'y of Health & Hum. Servs., No. 17-983V, 2023 WL 9502994, at *2 (Fed. Cl. Spec. Mstr. Dec. 21, 2023); Herrera v. Sec'y of Health & Hum. Servs., No. 15-651V, 2017 WL 1459002, at *3 (Fed. Cl. Spec. Mstr. Mar. 29, 2017); Stippich v. Sec'y of Health & Hum. Servs., No. 16-1595V, 2018 WL 7049403, at *1 (Fed. Cl. Spec. Mstr. Dec. 7, 2018); Interim Decision at 13. The undersigned will therefore award the rates requested.

### ii. Reasonable Hours Expended

In reducing an award of fees, the goal is to achieve rough justice, and therefore a special master may take into account their overall sense of a case and may use estimates when reducing an award. See Florence v. Sec'y of Health & Hum. Servs., No. 15-255V, 2016 WL 6459592, at *5 (Fed. Cl. Spec. Mstr. Oct. 6, 2016) (citing Fox v. Vice, 563 U.S. 826, 838 (2011)). It is well established that an application for fees and costs must sufficiently detail and explain the time billed so that a special master may determine, from the application and the case file, whether the amount requested is reasonable. Bell v. Sec'y of Health & Hum. Servs., 18 Cl. Ct. 751, 760 (1989); Rodriguez v. Sec'y of Health & Hum. Servs., No. 06-559V, 2009 WL 2568468 (Fed. Cl. Spec. Mstr. July 27, 2009). Petitioner bears the burden of documenting the fees and costs claimed. Rodriguez, 2009 WL 2568468 at *8.

It is well established that billing for clerical and other secretarial work is not permitted in the Vaccine Program. See, e.g., Rochester v. United States, 18 Cl. Ct. 379, 387 (1989) (legal assistant services that were "primarily of a secretarial and clerical nature . . . should be considered as normal overhead office costs included with the attorneys' fee rates"). Clerical and secretarial work includes tasks such as making travel arrangements, setting up meetings, and reviewing invoices. See Raymon v. Sec'y of Health & Hum. Servs., No. 11-654V, 2016 WL 7212323 at *10 (Fed. Cl. Spec. Mstr. Nov. 2, 2016); Sokol v. Sec'y of Health & Hum. Servs., No. 16-1631V, 2019 WL 4723836, at *3-4 (Fed. Cl. Spec. Mstr. Aug. 28, 2019) (determining billing for "scanning and numbering exhibits" is a clerical and administrative task that is not compensable).

The undersigned has reviewed the submitted billing entries for each firm. For the billing entries of Petitioner's current counsel of record, the undersigned finds the total number of hours billed to be largely reasonable. The billing entries accurately reflect the nature of the work performed and the undersigned does not find any of the entries to be objectionable. Respondent also has not indicated that he finds any of the entries to be objectionable either. Petitioner is therefore awarded final attorneys' fees for Mr. Mark Sadaka in the amount of $70,109.97.

4

Upon review of the submitted billing records for Petitioner's former counsel of record, the undersigned finds that a reduction is appropriate because of block billing and countless entries billed for administrative tasks. A reduction for these problems was also made in the Interim Fees Decision. See Interim Decision at 14.

For example, Mr. Mark Krueger billed one 4.50-hour entry for "[r]eview report on Celiac/POTS; telephone call with Attorney Deb Begley regarding same; review Respondent's recently file reports; attend Telephone Status Conference; telephone call with client regarding same; research onset of Celiac disease; review and chart cross country meet's times regarding Dr. Lancaster's report concerning Celiac prior to HPV." Pet. Exhibit ("Ex.") C at 2. And Mr. Andrew Kruger billed 2.00 hours for "[r]eview report of Dr. Lerner. Email to Dr. Lerner re same. Email client re same. Prepare for and attend status conference." Id. at 9. Without including the specific amounts of time spent on each task, especially in the first example, it is difficult to assess whether the time billed is reasonable.

Further, some of the entries that constitute block billing contain noncompensable administrative tasks as described above. For example, Ms. Nehring block billed 3.50 hours for "[s]ummarize medical records, scan Spectrum health records, draft notice of filing and E-file same," and many other entries including scanning or organizing and E-filing. Pet. Ex. C at 1. Likewise, in a block billing entry for 1.80 hours, Mr. Andrew Krueger billed for "[r]eview Dr. Shoenfeld report, and format same. Email to Mark Sadaka re same. File expert report." Id. at 14. While these block billing entries have elements that are compensable, it is impossible determine how much time was expended to each individual task in each entry. Thus, the undersigned will deduct the fees by Krueger & Hernandez SC[5] by 10%, resulting in a deduction of $6,861.31.[6] Petitioner is therefore awarded final attorneys' fees for the work of her former counsel, Krueger & Hernandez SC, in the amount of $61,751.79.[7]

### B.   Attorneys' Costs

Petitioner requests $175.18 in attorneys' costs from Petitioner's current counsel of record. This amount is comprised of acquiring medical records and shipping costs. The undersigned has reviewed the requested costs and finds them to be reasonable and largely supported with appropriate documentation. See Pet. Ex. B. Accordingly, the full amount of costs for Petitioner's current counsel of record, Mr. Mark Sadaka, is awarded.

Petitioner requests $243,079.16 in attorneys' costs from Petitioner's former counsel of record. This amount is comprised of acquiring medical records, copies, travel expenses, court reporter expenses, and expert fees from Dr. Aaron Lerner ($214,000.00) and Dr. Yehuda Shoenfeld ($16,000.00). The undersigned finds reductions necessary for several reasons.

---

[5] The entries listed above are examples and do not constitute an exhaustive list.

[6] $68,613.10 x 0.10 = $6,861.31.

[7] $68,613.10 - $6,861.31 = $61,751.79.

5

First, support was not provided for any of the entries labeled "copies" or facsimile charges. Pet. Ex. C at 15-16. This results in a reduction of $251.20.[8]

Second, several reductions are necessary as to travel expenses by Krueger & Hernandez SC. Mr. Mark Krueger traveled to Petitioner's city of residence to appear remotely for a hearing on September 16, 2016. Submitted for reimbursement was a first-class ticket both ways in the amount of $632.20. Pet. Ex. C at 19-21. Then, both Mr. Mark Krueger and Mr. Andrew Krueger traveled for the hearing on October 6, 2016. Mr. Andrew Kreuger traveled round trip to Buffalo, New York to appear for the hearing remotely with their expert. Submitted for reimbursement was a Delta Comfort + ticket both ways in the amount of $555.95. Id. at 27-29. Mr. Mark Krueger traveled to Washington, D.C. to appear for the hearing. Submitted for reimbursement was a first-class ticket both ways in the amount of $838.20. Id. at 30-32.

The Vaccine Program does not compensate for upgraded methods of travel such as first-class airfare and business class. See McCulloch v. Sec'y of Health & Hum. Servs., No. 09-293V, 2015 WL 5634323, at *22 (Fed. Cl. Spec. Mstr. Sept. 1, 2015); Tetlock v. Sec'y of Health & Hum. Servs., No. 10-56V, 2017 WL 5664257, at *6 (Fed. Cl. Spec. Mstr. Nov. 1, 2017); Wright v. Sec'y of Health & Hum. Servs., No. 12-423V, 2018 WL 7017749, at *4 (Fed. Cl. Spec. Mstr. Dec. 10, 2018); Digerolamo v. Sec'y of Health & Hum. Servs., No. 16-0920V, 2019 WL 4305792, at *4 (Fed. Cl. Spec. Mstr. June 28, 2019). Moreover, there was no justification as to why a first-class ticket was necessary. Therefore, the undersigned reduces the amount of the two first-class tickets by 50% and the Comfort + ticket by 33%, for a total reduction of $918.66.[9] See Wright, 2018 WL 7017749, at *4 (reducing Delta Comfort + tickets by 33%).

For the hearing on September 16, 2016, Mr. Mark Krueger stayed at the Amway Grand Plaza (Curio Collection by Hilton) in Grand Rapids, Michigan at a rate of $246.00 per night. Pet. Ex. C at 22. This nightly rate exceeds the per diem rate for a hotel stay in Grand Rapids in 2016, which was $103.00 per night.[10] The undersigned will award the 2016 per diem nightly rate for Mr. Mark Krueger's hotel stay, plus any applicable state and local taxes. See Digerolamo, 2019 WL 4305792, at *4; Wagner v. Sec'y of Health & Hum. Servs., No. 17-0407V, 2019 WL 4303281, at *3 (Fed. Cl. Spec. Mstr. June 28, 2019). This results in a reduction of $143.00.[11] Moreover, during this stay, Petitioner included two room service charges as part of the total bill, one for $70.90 and one for $24.78. Pet. Ex. C at 22. For Grand Rapids, Michigan, the per diem rate for meals in 2016 was $59.00 per day.[12] The undersigned

---

[8] $63.60 + $102.20 + $67.20 + $0.60 + $2.40 + $2.80 + $12.40 = $251.20.

[9] (($632.20 + $838.20) x 0.50) + ($555.95 x 0.33) = $918.66.

[10] See GSA FY 2016 Per Diem Rates for Grand Rapids, Michigan at https://www.gsa.gov/travel/plan-a-trip/per-diem-rates/per-diem-files.

[11] $246.00 - $103.00 = $143.00.

[12] See GSA FY 2016 Per Diem Rates for Grand Rapids, Michigan at https://www.gsa.gov/travel/plan-a-trip/per-diem-rates/per-diem-files.

6

will reduce the $70.90 meal charge to the per diem rate resulting in a reduction of $11.90.[13]  See Digerolamo, 2019 WL 4305792, at *4; Wagner, 2019 WL 4303281, at *3; Otto v. Sec'y of Health & Hum. Servs., No. 16-1144, 2020 WL 1304189, at *5 (Fed. Cl. Spec. Mstr. Feb. 10, 2020).  Next, while the $24.78 meal charge was included in the total hotel bill, Petitioner also listed it separately in the costs entries, resulting in duplicative billing.  Pet. Ex. C at 15.  This results in a reduction of $24.78.

Third, reductions are necessary to the experts' fees.  Petitioner requests $16,000.00 for work performed by Dr. Shoenfeld at a rate of $500.00 per hour.  Pet. Ex. C at 44.  This rate has previously been found reasonable.  See Switzer v. Sec'y of Health & Hum. Servs., No. 18-1418V, 2022 WL 774712, at *5 (Fed. Cl. Spec. Mstr. Jan. 25, 2022); Vance v. Sec'y of Health & Hum. Servs., No. 15-675V, 2021 WL 3011903, at *5 (Fed. Cl. Spec. Mstr. June 9, 2021); Phillips v. Sec'y of Health & Hum. Servs., No. 16-906V, 2019 WL 3409975, at *4-5 (Fed. Cl. Spec. Mstr. May 16, 2019).  Therefore, undersigned will award Dr. Shoenfeld's hourly rate of $500.00.

Dr. Shoenfeld spent a total of 32 hours on this case and submitted two expert reports.  The invoice has four entries.  Pet. Ex. C at 44.  The first states that between January 1 and January 14, 2018, Dr. Shoenfeld spent 10 hours on "[r]eview of the literature," for which he billed $5,000.00.  Id.  The second entry states that from January 15 to January 21, 2018, Dr. Shoenfeld spent eight hours "[w]riting the initial report," for which he charged $4,000.00.  Id.  The third entry reports that from April 12 to April 20, 2018, Dr. Shoenfeld spent eight hours "[w]riting the supplemental report," for which he charged $4,000.00.  Id.  The final entry states that from July 11 to July 17, 2018, Dr. Shoenfeld spent six hours "[c]ombining the two reports, per request," for which he charged $3,000.00.  Id.  The undersigned finds the amount of time spent on these tasks to be reasonable but cautions against block billing.  Block billing frustrates the Court's ability to assess the reasonableness of a fees request.  See Baker v. Sec'y of Health & Hum. Servs., No. 99-653V, 2005 WL 589431, at *1 (Fed. Cl. Spec. Mstr. Feb. 24, 2005) (finding that "fees for experts are subject to the same reasonableness standard as fees for attorneys").  This is not a new issue for Dr. Shoenfeld.  See Laderer v. Sec'y of Health & Hum. Servs., No. 09-097V, 2016 WL 3044838, at *6 (Fed. Cl. Spec. Mstr. Apr. 20, 2016); Switzer, 2022 WL 774712, at *6.  The undersigned will award Dr. Shoenfeld the full amount requested, $16,000.00, but warns against block billing in the future.

Petitioner requests $214,000.00 for work performed by Dr. Lerner at a rate of $300.00 per hour.  Pet. Ex. C at 42-43.  Dr. Lerner has not previously been awarded fees in the Vaccine Program and thus his hourly rate has not yet been determined.  The undersigned finds this rate reasonable as other special masters have determined that rates higher than $300.00 per hour for other pediatric gastroenterologists have been reasonable.  See, e.g., Buchman v. Sec'y of Health & Hum. Servs., No. 20-834V, 2023 WL 7220777, *6 (Fed. Cl. Spec. Mstr. Oct. 11, 2023) (finding $300.00 per hour for the work of a gastroenterologist was reasonable even though it was less than what other gastroenterologists, including those with limited experience in the Vaccine Program, have been awarded); Ploughe v. Sec'y of Health & Hum. Servs., No. 14-626V, 2017 WL 4455632, at *4 (Fed. Cl. Spec. Mstr. Sept. 11, 2017) (reducing the requested hourly rate for

---

[13] $70.90 - $59.00 = $11.90.

petitioner's pediatric gastroenterologist from $500.00 to $400.00 per hour); Reske v. Sec'y of Health & Hum. Servs., No. 19-131V, 2023 WL 6464919, at *2 (Fed. Cl. Spec. Mstr. Aug. 29, 2023); Zug v. Sec'y of Health & Hum. Servs., No. 15-1166V, 2023 WL 3000821, at *6 (Fed. Cl. Spec. Mstr. Mar. 23, 2023). The undersigned will award Dr. Lerner's rate of $300.00 per hour.

Dr. Lerner spent a total of 740 hours on this case and submitted two expert reports. Pet. Ex. C at 42-43. Based on her experience, the undersigned finds this amount of time very excessive, especially in comparison to Petitioner's other expert. Moreover, Dr. Lerner engaged in block billing with vague entries. In Dr. Lerner's first invoice, there are five entries for 690 hours of work. Id. at 42. The first states that between October 1, 2016 and January 31, 2017, Dr. Lerner spent 200 hours "[r]eading and analyzing the 50 exhibits, which included more than 3,000 pages of exhibits." Id. The second entry states that from November 1, 2016 to May 2, 2017, Dr. Lerner spent 30 hours on "[e]mails and communication with attorney Mark Krueger's office concerning exhibits and expert report." Id. The third entry states that between October 1, 2016 and January 31, 2017, Dr. Lerner billed 300 hours for "[e]xtraction, reading, selecting, and analyzing medical literature. This included screening around 120 different sources, and citing 59 references." Id. In the fourth entry, Dr. Lerner wrote he spent 150 hours "[w]riting the final report" from December 15, 2016 to January 31, 2017. Id. And for the last entry on this invoice, Dr. Lerner did not even include specific dates, rather he wrote that he spent 10 hours from "April 2017 [to] May 2017" "[r]eading, analyzing [Respondent's expert's] report and strategizing a response." Id. Dr. Lerner's second invoice contained billing entries in 10-hour increments. See id. at 43.

Petitioner must monitor expert fees to ensure they remain reasonable. See Perreira v. Sec'y of Health & Hum. Servs., No. 90-847V, 1992 WL 164436, at *4 (Cl. Ct. Spec. Mstr. June 12, 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). The expert should only be compensated for the number of hours reasonable and necessary for the litigation. Wasson, 1991 WL 135015, at *3; O'Neill v. Sec'y of Health & Hum. Servs., No. 08-243V, 2015 WL 2399211, at *16 (Fed. Cl. Apr. 28, 2015). The special master may use her experience and judgment to determine "the reasonableness of the number of hours expended by an expert under the circumstances in a particular case." O'Neill, 2015 WL 2399211, at *16. Based on her experience, the undersigned finds this amount of time excessive, and finds a reduction necessary.

The Federal Circuit has previously upheld large cuts to the invoice of experts when they spent an excessive amount of time performing research and other work. Riggins v. Sec'y of Health & Hum. Servs., 99-382V, 2009 WL 3319818, at *10-17 (Fed. Cl. Spec. Mstr. June 15, 2009), mot. for rev. den'd, 106 Fed. Cl. 600 (withdrawn), aff'd, 406 F. App'x 479, 483 (Fed Cir. 2011) (affirming the reduction of expert costs by almost 90% due to excessive billing by the expert); Loutos v. Sec'y of Health & Hum. Servs., No. 03-355V, 2015 WL 10986961, at *8 (Fed. Cl. Spec. Mstr. Dec. 18, 2015) (reducing compensable time devoted to legal research by an expert by 83%); Sims ex rel. A.E.S. v. Sec'y of Health & Hum. Servs., No. 15-1526V, 2023 WL 2234265, *5-8 (Fed. Cl. Spec. Mstr. Feb. 27, 2023) (finding it was "unreasonable and unnecessary" for an expert to bill 785 hours, including "an extraordinary amount of time" completing tasks such as reviewing medical literature, and reducing his hours by 40%); Loving v. Sec'y of Health & Hum. Servs., No. 02-469V, 2015 WL 10579257, at *13-16 (Fed. Cl. Spec.

Mstr. Dec. 15, 2015) (reducing an expert's fee by one-third for poor item descriptions, redundant research work, and administrative tasks).

The undersigned previously reduced an experts' fees by 40% due to the extreme nature of the amount of excessive billing, vague entries, and block billing. Mullins ex rel. K.M. v. Sec'y of Health & Hum. Servs., No. 19-320V, 2023 WL 3051273, at *5 (Fed. Cl. Spec. Mstr. Apr. 24, 2023). This case warrants more than a 40% reduction because in Mullins, the expert billed 583 hours and here, Dr. Lerner billed 740 hours, almost 200 more hours. See id. at *3. Given the excessive time spent and block billing, the undersigned finds a reduction of 50% necessary to Dr. Lerner's total bill. This results in a reduction of $107,000.00,[14] totaling Dr. Lerner's fees to $107,000.00.[15]

## II. CONCLUSION

Based on all of the above, the undersigned finds that it is reasonable to compensate Petitioner and her counsel as follows:

For current counsel, Mr. Mark Sadaka:

| | |
|---|---|
| Attorneys' Fees Requested | $70,109.97 |
| (Reduction of Attorneys' Fees) | -$0.00 |
| **Attorneys' Fees Awarded** | **$70,109.97** |
| | |
| Attorneys' Costs Requested | $175.18 |
| (Reduction of Attorneys' Costs) | -$0.00 |
| **Attorneys' Costs Awarded** | **$175.18** |
| | |
| **Attorneys' Fees and Costs Awarded** | **$70,285.15** |

For former counsel, Krueger & Hernandez SC:

| | |
|---|---|
| Attorneys' Fees Requested | $68,613.10 |
| (Reduction of Attorneys' Fees) | -$6,861.31 |
| **Attorneys' Fees Awarded** | **$61,751.79** |
| | |
| Attorneys' Costs Requested | $243,079.16 |
| (Reduction of Attorneys' Costs) | -$108,349.54 |
| **Attorneys' Costs Awarded** | **$134,729.62** |
| | |
| **Attorneys' Fees and Costs Awarded** | **$196,481.41** |

---

[14] $214,000.00 x 0.5 = $107,000.00.

[15] $214,000.00 - $107,000.00 = $107,000.00.

Total:

| | |
|---|---|
| Total Attorneys' Fees Requested | $138,723.07 |
| (Reduction of Attorneys' Fees) | -$6,861.31 |
| **Total Attorneys' Fees Awarded** | **$131,861.76** |
| | |
| Total Attorneys' Costs Requested | $243,254.34 |
| (Reduction of Attorneys' Costs) | -$108,349.54 |
| **Total Attorneys' Costs Awarded** | **$134,904.80** |
| | |
| **Total Attorneys' Fees and Costs Awarded** | **$266,766.56** |

**Accordingly, the undersigned awards $70,285.15 in attorneys' fees and costs, in the form of a check payable jointly to Petitioner and Petitioner's counsel, Mr. Mark Sadaka.**

**Accordingly, the undersigned awards $196,481.41 in attorneys' fees and costs, in the form of a check payable jointly to Petitioner and Petitioner's former counsel, Krueger & Hernandez SC.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this Decision.[16]

**IT IS SO ORDERED.**

<u>s/Nora Beth Dorsey</u>
Nora Beth Dorsey
Special Master

---

[16] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.